GOLDBERG, STINNETT, DAVIS & LINCHEY
A Professional Corporation
DANIEL M. LINCHEY, ESQ. CA Bar #111739
KATHERINE D. RAY, ESQ. CA Bar #121002
44 Montgomery Street, Suite 2900
San Francisco, CA 94104
Telephone: (415) 362-5045
Facsimile: (415) 362-2392

Attorneys for E. Lynn Schoenmann, Trustee of the Chapter 7 Estate of Alliance Financial Capital, Inc.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>ALLIANCE FINANCIAL CAPITAL, INC.,<br><br>Debtor. | Case No. 08-30575-TEC<br><br>Chapter 7<br><br>Date: February 20, 2009<br>Time: 9:30 a.m.<br>Place: Courtroom No. 23<br>235 Pine Street, 23rd Floor<br>San Francisco, CA<br>Judge: Hon. Thomas E. Carlson |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRUSTEE'S MOTION FOR ORDER AUTHORIZING SURCHARGE OF CASH COLLATERAL TO PAY ADMINISTRATIVE EXPENSES**

E. Lynn Schoenmann, Trustee ("Trustee") of the chapter 7 estate of Alliance Financial Capital, Inc. ("Debtor" or "AFC") hereby sets forth her Memorandum of Points and Authorities in support of Trustee's Motion For Order Authorizing Surcharge of Cash Collateral To Pay Administrative Expenses.

**STATEMENT OF FACTS**

The following facts are set forth in the declaration of Katherine D. Ray ("Ray Declaration") filed in support hereof, and by the record of this Court:

1. Richard Hatfield ("Hatfield") filed a voluntary petition for relief under chapter 11 of

1
MEMO. OF PTS & AUTHORITIES IN SUPPORT OF TRUSTEE'S MOTION FOR ORDER AUTHORIZING SURCHARGE OF CASH COLLATERAL TO PAY ADMINISTRATIVE EXPENSES
10420 118582.DOC

Case: 08-30575   Doc# 97-1   Filed: 01/22/09   Entered: 01/22/09 10:04:59   Page 1 of 9

the Bankruptcy Code on January 31, 2008 and an order for relief was entered on that date. By order entered on April 11, 2008, Hatfield's chapter 11 case was converted to one under chapter 7, and Janina Elder ("Hatfield Trustee") was subsequently appointed as chapter 7 trustee of Hatfield's bankruptcy estate.

2. AFC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 4, 2008 and an order for relief was entered on that date. On April 22, 2008, the case was converted to under chapter 7 and a conversion order was entered on April 23, 2008. The Trustee was subsequently appointed as chapter 7 trustee of AFC's bankruptcy estate.

3. On April 23, 2008, an order (the "Joint Administration Order") was entered consolidating the Hatfield and AFC bankruptcy cases for administrative purposes. On June 25, 2008, an order was entered vacating the Joint Administration Order.

4. AFC operated a factoring business pursuant to which it purchased accounts receivable of its clients at a discount and pursued collection of the purchased accounts receivable. Due to its business activities, AFC is a plaintiff in numerous collection actions pending throughout the country.

5. In the late 1990's and continuing into the early 2000's, AFC obtained loans from individual investors (collectively, the "Noteholders") in exchange for high interest rate-bearing promissory notes issued by AFC, secured by AFC's assets and personally guaranteed by Hatfield.

6. Beginning in 2001, Hatfield became involved in protracted litigation with his former putative spouse, Jennifer Moore ("Moore") in the San Mateo County Superior Court.

7. In or about 2004, Hatfield formed Alliance Financial Capital Holdings, Inc. ("Holdings"). Hatfield is the sole shareholder of Holdings; Moore asserts a one-half interest in Hatfield's ownership of Holdings.

8. After Holdings was formed, certain of the holders of the AFC promissory notes exchanged their AFC-issued notes for promissory notes issued by Holdings, which notes were also secured by AFC's assets and personally guaranteed by Hatfield. The formation of Holdings and the replacement of the AFC-issued promissory notes was apparently done so that all of the investor loans to or for AFC's benefit would be represented by a single AFC note held by Holdings.

9. According to its Schedule D of AFC's Schedules, Holdings holds secured claims

2
MEMO. OF PTS & AUTHORITIES IN SUPPORT OF TRUSTEE'S MOTION FOR ORDER AUTHORIZING SURCHARGE OF CASH COLLATERAL TO PAY ADMINISTRATIVE EXPENSES
10420 118582.DOC

Case 08-30575 Doc# 97-1 Filed 01/22/09 Entered: 01/22/09 10:04:59 Page 2 of 9

against AFC in the amount of $5,000,000, which is "the same debt as listed herein in favor of the noteholders who are listed individually and designated as such." Consequently, the debt to Holdings is the same debt that is owing by AFC to the Noteholders.

10. On December 1, 2004, Holdings filed a UCC-1 financing statement with the California Secretary of State's office, asserting a security interest in all of AFC's assets, including without limitation all accounts, contract rights, claims and causes of action. A copy of Holdings filed UCC-1 is attached as Exhibit "A" to the Ray Declaration.

11. In 2005, Moore commenced a lawsuit in the San Mateo County Superior Court, Case No. CIV-450151 (the "Consolidated Action"), against Hatfield, AFC, Holdings, certain AFC affiliates, and the individual holders of the promissory notes issued by AFC, Holdings and other AFC affiliates, secured by the assets of AFC and personally guaranteed by Hatfield. In the Consolidated Action, Moore sought to invalidate the promissory notes as usurious, for dissolution of AFC, Holdings and AFC affiliates, and other relief. In response, a number of the Noteholders filed cross-complaints against Hatfield AFC, Holdings and other AFC affiliates seeking enforcement of their promissory notes. Noteholder Jacqueline Jackson ("Jackson") filed a separate action in the San Mateo County Superior Court, Case No. CIV-454150 (the "Jackson Action"), against AFC, Hatfield, Moore and certain AFC affiliates, for enforcement of promissory notes, which action was later consolidated with the Consolidated Action.

12. On May 31, 2006, Jackson obtained a writ of attachment against AFC in the Jackson Action and filed a notice of attachment lien with the California Secretary of State's Office against AFC.

13. In 2007, the Noteholders, Hatfield, AFC, Holdings and other AFC affiliates reached a settlement in the state court, over Moore's objection, under which the Noteholders would receive $2 million to settle their unpaid loan claims. The settlement was approved by the state court as a good faith settlement and Moore appealed. However, the settlement payment was never made and certain of the Noteholders moved for enforcement of the settlement.

14. On October 22, 2007, judgment was entered against Hatfield, AFC, Holdings and other AFC affiliates in the Consolidated Action in favor of the Noteholders, in the following

3

amounts, a copy of which judgment is attached as Exhibit "B" to the Ray Declaration:

| Noteholder/Judgment Creditor | Amount |
|---|---|
| Jacqueline Jackson, individually and as trustee of the Jacqueline Jackson Trust dated 10-19-89 and the Robert S. Jackson Trust dated 12-13-86 | $131,419.99 |
| David W. Fenton, individually and Jacqueline Fenton as trustee of the Jacqueline M. Fenton Trust dated 12-13-86 | $158,549.93 |
| John Culver, individually and as trustee of the John Culver Money Purchase Plan, the John A. Culver Trust Fiserv Trust Company, FBO John A. Culver Spectrum IRA #X519340-0001 | $278,612.259 |
| D. Karen Beard, individually and on behalf of Glen Haven LLC, Pensco Trust Company FBO D. Karen Beard IRA BE-053 | $141,629.27 |
| Eileen M. Cafferata, Trustee of the Robert A. Cafferata and Eileen M. Cafferata Revocable Trust | $12,053.55 |
| Helen Chandler | $9,869.90 |
| Joann Del Re, Trustee of the Robert L. Del Re and Joann H. Del Re Trust dated October 24, 1997 | $106,143.21 |
| J.D. Erickson | $66,924.51 |
| Tomas Charles and Fredericka Ann Hill, individually and as trustees for the Hill Family Trust dated 10/99 | $60,516.59 |
| Pamela Jo Hunter | $10,286.61 |
| Elizabeth B. Kirby | $32,783.20 |
| Diana and Craig Locke | $6,128.34 |
| John Michael Nagel and Susana Farber Nagle, individually and as trustees for the Nagel Living Trust dated 4/23/93 | $15,049.33 |
| George Rnjak | $47,788.72 |
| Casey B. Sheldon | $24,960.74 |
| Melvin R. Slager, individually and on behalf of Sandhill Road Venture Group, San Hill Road Venture One, I.P. Enterprises and I.P. Enterprises Pension Fund | $148,779.64 |
| Richard L. and Jean K. Spees, individually and as trustees of the Spees Family Revocable Living Trust dated 12-29-94, First Trust Corporation FBO Richard L. Spees | $73,411.35 |
| Edward F. and Beverly J. Winthers, individually and as trustees of the | $54,327.63 |

LAW OFFICES
GOLDBERG, STINNETT, DAVIS & LINCHEY
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

| | | |
|---|---|---|
| 1 | Winthers Family Trust dated 7-14-80 | |
| 2 | Margaret Anstrand | $8,332.48 |
| 3 | Rosemary DeMarco | $54,108.61 |
| 4 | Frank and Fran Grasso, individually and as trustees for the Grasso Family Revocable Trust dated 8-30-99 | $12,053.55 |
| 5 | Gerald Ireland | $7,232.13 |
| 6 | Hetta Malone | $82,000.55 |
| 7 | Eleanor J. Pean, individually and as trustee for the Pean Development Corporation Money Purchase Plan | $190,192.90 |
| 9 | Francey Philipson Swim | $42,187.43 |
| 10 | Suzanna Pollack | $56,487.76 |
| 11 | Jack Webster | $42,519.36 |
| 12 | Karen Beard, Eileen M. Cafferata, Helen Chandler, Casey Sheldon, Joann Del Re, J.D. Erickson, Thomas and Fredericka Hill, Pamela Jo Hunter, Elizabeth Kirby, Diana and Craig Locke, John and Susan Nagle, Eleanor J. Pean, George Rnjak, Richard and Jean Spees, Edward and Beverly Winthers (prevailing parties for purposes of attorneys' fees award) | $13,29.00 |
| 15 | TOTAL | **$1,874,360,868** |

15. According to Item 4(a) of AFC's Statement of Financial Affairs, AFC was a party to more than 50 lawsuits in various forums throughout the country within the year preceding the Petition Date, namely as a plaintiff in collection actions. Those actions do not include older actions in which AFC obtained judgments which remain uncollected.

16. After the Trustee was appointed, the Trustee investigated the financial affairs of AFC, including the review of records pertaining to pending collection actions. The Trustee determined that substantial expenses would have to be incurred by the AFC Estate to investigate and assess the collectibility of the purchased receivables, to prosecute AFC's pending collection actions, to pursue enforcement and collection of judgments and otherwise proceed with the liquidation of AFC's assets. The Trustee's preliminary investigation of pending litigation by AFC to collect on purchased accounts receivables which have not yet been reduced to judgment, revealed that the $5.3 million value which AFC placed on the purchased accounts receivable was grossly overstated, and that the gross value of the uncollected receivables claims is less than $300,000.00, excluding the cost of

collection.

17. In May 2008, the AFC Trustee requested that the Hatfield Trustee and Moore, in their capacity as asserted shareholders of Holdings, enter into a stipulation (the "Section 506(c) Stipulation") with the AFC Trustee which provides that all allowed fees and expenses of the AFC Trustee and her professionals shall be deemed incurred for the benefit of Holdings and may be paid and recovered from property of the AFC Estate, pursuant to Section 506(c) of the Bankruptcy Code.

18. In June 2008, both the Hatfield Trustee and Moore agreed to and did sign the 506(c) Stipulation. However, Moore subsequently withdrew from the 506(c) Stipulation when the Trustee opposed Moore's motion for relief from the automatic stay.

19. In light of Moore's withdrawal from the 506(c) Stipulation and the lack of any assurance that the AFC Estate would be reimbursed for the substantial expenses which it would necessarily incur to liquidate the encumbered purchased accounts receivables claims, on June 27, 2008, the Trustee moved for authority to dispose of estate property to Holdings under Section 725 of the Bankruptcy Code, or alternatively, for authority to abandon estate assets under Section 556 of the Bankruptcy Code (the "Disposition Motion").

20. On July 28, 2008, an order ("Order") was entered authorizing the abandonment of all AFC assets, excluding cash, to AFC in the care and custody of Moore's counsel, James H. Seymour, Esq. The Order authorized the Trustee to retain $75,000 (the "Retained Cash") of the cash collected by the estate for payment of allowed administrative expenses, subject to a later motion to surcharge collateral pursuant to Bankruptcy Code Section 506(c). The Order provided for a further hearing regarding disposition of the balance of the cash held by the Trustee.

21. On November 17, 2008, Noteholders David and Jacqueline Fenton and Jacqueline Jackson (the "Moving Noteholders") filed their motion for turnover of funds pursuant to Section 725 of the Bankruptcy Code, seeking an order directing the Trustee to distribute the funds in her account, less the Retained Cash, to the Moving Noteholders (the "Turnover Motion"). Moore objected to the Turnover Motion.

22. On December 12, 2008, Burke Environmental, LLC ("Burke") filed a motion ("Burke Motion") for an order authorizing and directing the Trustee to release $26,833.25 of the cash held by

6
MEMO. OF PTS & AUTHORITIES IN SUPPORT OF TRUSTEE'S MOTION FOR ORDER AUTHORIZING SURCHARGE OF CASH COLLATERAL TO PAY ADMINISTRATIVE EXPENSES
10420 118582.DOC

Case 08-30575   Doc# 97-1   Filed 01/22/09   Entered: 01/22/09 10:04:59   Page 6 of 9

the Trustee to Burke.

23. A hearing on the Turnover Motion and the Burke Environmental Motion was held on December 19, 2008, at time the Court took the matters under submission and scheduled a conference call on the matter for January 26, 2009.

24. The AFC Trustee currently holds cash on hand in the amount of $217,628.55, all of which is subject to the secured claim of Holdings. Of this amount, no less than $98,083.46 is property of the AFC Estate and does not belong to AFC clients. From the cash on hand, the Trustee intends to retain the total sum of $75,000 (the "Retained Cash") as a source to pay allowed administrative expenses in AFC's case. The balance of cash will be paid to the Moving Noteholders or such other party(ies) as the Court determines has(have) a perfected lien against the cash.

25. The Trustee and her professionals incurred fees and expenses totaling $91,299.94 in the aggregate in administering AFC's estate, which efforts included collecting income from purchased receivables, terminating AFC's factoring agreement with an existing customer and collecting amounts owing to AFC thereon from the replacement factor, investigating assets and extensive litigation claims involving the debtor, communicating with various of the debtor's litigation counsel regarding the bankruptcy and pending litigation, formally dismissing actions involving settled claims, communicating with counsel for various secured creditors regarding disposition of assets including cash, and communications with various opposing counsel regarding pending litigation. Said activities provided a substantial benefit to Holdings.

## APPLICABLE LAW

Section 506(c) of the Bankruptcy Code permits a trustee to recover the reasonable and necessary expenses of preserving a secured creditor's collateral from such collateral. Section 506(c) states, in pertinent part: "The Trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim…" Only a trustee or debtor-in-possession have standing to seek recovery under Section 506(c); a trustee is obliged to seek recovery under Section 506(c) whenever his fiduciary duties so require. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, (2000) 120 S.Ct. 1942, 1950.

To recover under Section 506(c), a trustee must establish that the claim associated with the relevant collateral is both "allowed' and "secured." *In re Los Gatos Lodge, Inc.*, 278 F.3d 890 (9th Cir. 2002); *Bear v. Coben (In re Golden Plan of Cal., Inc.)* 895 F.2d 207, 712 (9th Cir. 1986). Further, the trustee must establish the extent to which the claim is to be treated as secured by establishing the value of the collateral. *In re Los Gators Lodge, Inc.*, *supra*, citing *Assocs. Commercial Corp. v. Bash*, 117 S.Ct. 1879 (1997). Lastly, the costs and expenses for which recovery is sought must be incurred for the benefit of the secured creditor and be reasonable and necessary. *In re Los Gatos Lodge, Inc.*, *supra*, *Cent. Bank of Mont. V. Cascade Hydraulics & Util. Serv., Inc. (In re Cascade Hydraulics & Util. Serv., Inc.)* 815 F.2d 546, 548 (9th Cir. 1987).

## DISCUSSION

1. Holdings' Secured Claim

Holdings holds a secured claim by virtue of its UCC-1 filing on December 2004, which perfected Holdings' lien against all of the Debtor's assets, including cash. The Debtor scheduled Holdings as holding a secured claim in the total amount of $5 million. The schedules state that the debt to Holdings is the same debt owing to the individual Noteholders, which were also separately listed. By the February 2007 settlement, the Noteholders' debt was reduced to $2 million. Following the Debtor's breach of the settlement, the debt owing to the Noteholders was reduced to judgment in the aggregate amount of $1,874,360,868. Consequently, Holdings holds an allowed secured claim of at least $1.874 million.

2. Value of the Collateral

As of December 31, 2008, the Trustee's cash receipts totaled $217,628.55, all of which cash is subject to Holdings' perfected lien. The Trustee intends to distribute all cash to the Moving Noteholders (as one of the underlying holders of Holdings' secured claim) or such other party(ies) as the Court may direct, excepting (a) $75,000, which will continued to be held by the Trustee as a source for payment of administrative expenses, pending consideration of fee applications of the Trustee's professionals and (b) $26,833.25 claimed by Burke Environmental, pending further order of the Court.

3. Expenses Incurred to Preserve or Dispose of Collateral

8
MEMO. OF PTS & AUTHORITIES IN SUPPORT OF TRUSTEE'S MOTION FOR ORDER AUTHORIZING SURCHARGE OF CASH COLLATERAL TO PAY ADMINISTRATIVE EXPENSES

LAW OFFICES
GOLDBERG, STINNETT, DAVIS & LINCHEY
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

10420 118582.DOC

Administrative expenses in the estate consist of the following[1]:

| | |
|---|---:|
| Trustee's compensation (11 U.S.C. §326) | $ 15,000.00 |
| Trustee's counsel fees and expenses (11 U.S.C. §330) (Goldberg, Stinnett, Davis & Linchey) | 52,339.63[2] |
| Trustee's accountants fees and expenses (11 U.S.C. §330) (Kokjer, Pierotti, Maiocoo & Duck LLP) | 7,660.37 |
| TOTAL | $ 75,000.00 |

Said administrative expenses were reasonable and necessary to preserve the collateral of Holdings, and provided a substantial benefit to it. Absent the services of the Trustee and her professionals, it is unknown what, if any, cash would be available for distribution to secured creditors. To the extent the compensation requests of the Trustee and her professionals are allowed, they are deemed reasonable and necessary. In the event allowed administrative expenses exceed $75,000.00 in the aggregate (as anticipated), the Trustee's counsel will reduce its allowed fees to enable the Trustee and the Trustee's accountants to be paid in full.

## CONCLUSION

Based on the foregoing, the Trustee is entitled to surcharge the cash collateral of Holdings to pay allowed administrative expenses of the estate. Accordingly, the Trustee respectfully requests that this Motion be granted and that the Trustee be authorized to pay allowed administrative expenses from the $75,000 held by the estate, and for such other and further relief as the Court deems proper.

DATED: January 21, 2009

GOLDBERG, STINNETT, DAVIS & LINCHEY
A Professional Corporation

By: /s/ Katherine D. Ray
Attorneys for E. Lynn Schoenmann, Trustee of the Chapter 7 Estate of Alliance Financial Capital, Inc.

---

[1] Subject to allowance; hearing on fee applications of Trustee's professionals is set for hearing concurrently with this Motion.

[2] The total fees and costs incurred by Trustee's counsel is $68,639.57, but counsel voluntarily reduces the amount to $52,339.63.

9
MEMO. OF PTS & AUTHORITIES IN SUPPORT OF TRUSTEE'S MOTION FOR ORDER AUTHORIZING SURCHARGE OF CASH COLLATERAL TO PAY ADMINISTRATIVE EXPENSES
10420 118582.DOC

Case: 08-30575   Doc# 97-1   Filed: 01/22/09   Entered: 01/22/09 10:04:59   Page 9 of 9